THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>Plaintiff, <br><br>v. <br><br>JOSE MUÑOZ-CORREA, <br><br>Defendant. | AMENDED MEMORANDUM DECISION AND ORDER <br><br>Case No. 2:23-cr-00302-CW <br><br>District Judge Clark Waddoups <br><br>Magistrate Judge Jared C. Bennett |

The United States of America ("United States") charged Defendant Jose Muñoz-Correa ("Mr. Muñoz-Correa") with Reentry of a Previously Removed Alien under 8 U.S.C. § 1326.[1] The court held Mr. Muñoz-Correa's initial appearance on August 22, 2023,[2] at which Mr. Muñoz-Correa contended that the United States was not entitled to a detention hearing because: (1) a violation of 8 U.S.C. § 1326 is not an offense that garners a detention hearing under 18 U.S.C. § 3142(f); and (2) the United States could not show that Mr. Muñoz-Correa poses a serious risk of flight. The court, under 18 U.S.C. § 3142(d), temporarily detained Mr. Muñoz-Correa for 10 days so that the Executive Branch authorities could determine whether to seek prosecution or deportation.

On August 31, 2023, the court convened a hearing to determine whether the United States is entitled to a detention hearing and, if so, whether the court should detain Mr. Muñoz-Correa or

---

[1] ECF No. 1.

[2] ECF No. 5.

release him on conditions.[3] Margot Johnson represented the United States, and Benjamin A. Hamilton represented Mr. Muñoz-Correa. After hearing the parties' arguments as to whether the United States is entitled to a detention hearing, the court took the matter under advisement and now rules that the United States is not entitled to a detention hearing because it failed to establish that Mr. Muñoz-Correa poses a serious risk of flight. Moreover, even if the United States were entitled to a detention hearing, because the United States stated that its evidence to prove serious risk of flight is the same evidence it would rely on to prove that no condition or combination of conditions would reasonably assure Mr. Muñoz-Correa's appearance, the United States would necessarily fail to carry its burden to show that Mr. Muñoz-Correa should be detained. Accordingly, Mr. Muñoz-Correa is released on conditions pending trial.

## LEGAL BACKGROUND

Because "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception,"[4] the Bail Reform Act of 1984 ("Act") allows the United States only two doors to obtain a detention hearing: (1) where the charge alleged in the operative charging document falls within specified statutes or statutory groups enumerated in the Act; or (2) where the case "involves," among other things, "a serious risk that the person will flee."[5] Reentry of a Previously Removed Alien is not one of the statutes that warrants a detention hearing under door number one.[6] Consequently, the only way the United States can and is

---

[3] ECF No. 19.

[4] *United States v. Salerno*, 481 U.S. 739, 755 (1987).

[5] 18 U.S.C. § 3142(f)(1)-(2).

[6] *Id*. § 3142(f).

seeking to obtain a detention hearing here is by arguing that this case involves a serious risk that Mr. Muñoz-Correa will flee.

Unfortunately, the statutory clarity ends there. The Act neither defines a "serious risk" of flight nor provides the burden of proof that the United States must carry (e.g., probable cause, preponderance, etc.) to establish a "serious risk." Accordingly, courts must rely on the canons of statutory construction.[7]

The launchpad for all statutory construction begins with the Act's plain language, which requires the court to apply the "plain and ordinary meaning" of the words of the statute.[8] The United States Court of Appeals for the Tenth Circuit has already performed this plain-language analysis on the word "flee," and determined that it constitutes "volitional conduct" by the defendant to avoid prosecution.[9] However, the Tenth Circuit has neither performed linguistic analysis on the phrase "serious risk" nor provided the standard that the United States must meet to establish serious risk. Therefore, this court must attempt to do so.

When attempting to perform a plain-language analysis of a statute, courts can and often rely on dictionaries.[10] Consulting a lexicon for the term "serious risk" yields the following. First, the most relevant definition of "serious" in the Oxford Dictionary includes, "[s]ubstantial,

---

[7] *See, e.g., United States v. Ailon-Ailon*, 875 F.3d 1334, 1337-39 (10th Cir. 2017) (relying on canons of statutory construction to interpret 18 U.S.C. § 3142(f)).

[8] *Id*. at 1337-38.

[9] *Id.* at 1335.

[10] *Id.* at 1338 (relying on dictionary definitions of "flee" to determine ordinary meaning).

considerable, or impressive in quantity or extent; great, large, abundant."[11] Black's Law Dictionary defines "serious" as "weighty; important."[12] As to "risk," the Oxford Dictionary provides, "the possibility of loss, injury, or other adverse or unwelcome circumstance; a chance or situation involving such a possibility."[13] Black's Law Dictionary similarly defines "risk" as "[t]he uncertainty of a result, happening, or loss; the chance of injury, damage, or loss; esp[ecially] the existence and extent of the possibility of harm."[14] Thus, a plain language synthesis of "serious risk" that a defendant will "flee" means a substantial or considerable possibility—as opposed to an average possibility—that the defendant will volitionally avoid prosecution or court supervision.[15]

But to what extent must the United States establish these factors? The Act is silent on that point. Whereas the Act requires "clear and convincing evidence" to establish that a defendant is a danger to the community in a detention hearing, it fails to state the extent to which the United

---

[11] *Serious*, oed.com, https://www.oed.com/dictionary/serious_adj2?tab=meaning_and_use#23340060 (last visited Aug. 31, 2023).

[12] *Serious*, Black's Law Dictionary (11th ed. 2019).

[13] *Risk*, oed.com, https://www.oed.com/dictionary/risk_n?tab=meaning_and_use#25069752 (last visited Aug. 31, 2023).

[14] *Risk*, Black's Law Dictionary (11th ed. 2019).

[15] *See, e.g.*, *United States v. Figueroa-Alvarez*, No. 23-cr-171, 2023 WL 4485312, at *5 (D. Idaho July 10, 2023) ("Taken together, then, a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk—beyond average—that the defendant will not intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision.").

States must prove a "serious risk" of flight. Unsatisfied with this gap, some courts have filled it by requiring a serious risk of flight to be proven by a preponderance of the evidence.[16]

However, as the United States points out—and as Mr. Muñoz-Correa appeared to agree at oral argument—relying on the preponderance of the evidence standard seems counterintuitive to the structure of the Act.[17] Although the Act is silent as to the burden of proof to establish whether a defendant is an unmanageable risk of nonappearance in a detention hearing, all the courts that have considered the issue have held that a preponderance of the evidence standard applies.[18] This point is significant. Proving a "serious risk of flight" is a *threshold* requirement to even get to a detention hearing. Therefore, it makes little sense for the court to insist that the burden of proof to *qualify for* a detention hearing be the same as the burden required to actually detain the defendant in a detention hearing. By analogy, it would be akin to requiring the United States to meet the beyond a reasonable doubt standard to arrest an individual instead of probable cause. The fact that serious risk of flight is a *threshold* issue to *holding* a detention hearing suggests that its burden of proof should be less than the burden necessary to show that a defendant should be detained.[19] For these reasons, Mr. Muñoz-Correa proposed a "probable

---

[16] *Id.* at *5 (adopting the preponderance of the evidence standard and citing other courts that did too).

[17] *Ailon-Ailon,* 875 F.3d at 1338 (considering the "structure" of the Act to determine the meaning of the Act's plain language).

[18] *United States v. Himler,* 797 F.2d 156 (3d Cir. 1986); *United States v. Portes,* 786 F.2d 758 (7th Cir. 1986); *United States v. Vortis,* 785 F.2d 327 (D.C. Cir. 1986); *United States v. Medina,* 775 F.2d 1398 (11th Cir. 1985); *United States v. Fortuna,* 769 F.2d 243 (5th Cir. 1985); *United States v. Motamedi,* 767 F.2d 1403 (9th Cir. 1985); *United States v. Orta,* 760 F.2d 887 (8th Cir. 1985); *United States v. Chimurenga,* 760 F.2d 400 (2d Cir. 1985).

[19] *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999) (stating that the court's decision concerning whether to hold a detention hearing is "based on even less information than a

cause standard" for this threshold inquiry while the United States suggested that its burden was not defined but was "less than a preponderance."

As shown below, even applying less than a preponderance standard, the United States has failed to establish that Mr. Muñoz-Correa poses a serious risk of flight. And because the United States relies on the same evidence to prove serious risk of flight as it does to establish that Mr. Muñoz-Correa should be detained, the United States' evidence is insufficient to establish detention, which requires the court to set forth conditions of release.

## ANALYSIS

### I.  THE UNITED STATES HAS FAILED TO ESTABLISH THAT MR. MUÑOZ-CORREA IS A SERIOUS RISK OF FLIGHT.

The United States fails to qualify for a detention hearing because this case does not "involve[] a serious risk that the defendant will flee."[20] When assessing how serious this risk is, courts look to several factors including: incentives to flee, ability to flee, ties to the jurisdiction of the United States, and reliability and trustworthiness of the defendant.[21] To establish these factors, the United States "must present 'concrete information' not 'mere conclusory allegations.'"[22] These factors are discussed collectively below and show that the United States

---

decision to detain or release" a defendant and, therefore, the determination to hold a detention hearing in the first place requires less evidence than the determination to detain a defendant, otherwise applying the preponderance standard to a threshold issue "would blur two distinct statutory inquiries and would give more weight to fact intensive analysis at an earlier stage of the case than Congress appears to have intended").

[20] 18 U.S.C. § 3142(f)(2).

[21] *Figueroa-Alvarez*, 2023 WL 4485312, at *7.

[22] *Id.* at *5.

has not established a substantial or considerable possibility that Mr. Muñoz-Correa will volitionally avoid prosecution or court supervision.

Although Mr. Muñoz-Correa was removed from the United States in 2011, he immediately returned to the same mobile home in West Jordan, Utah that he lived in with his family prior to his removal. Whatever foreign contacts had in his native country, they were not enough to keep him there for any material length of time. And when he immediately returned to the United States post-removal, he did not seek to go somewhere other than his home in West Jordan. He went right back to the home in Utah where immigration authorities found him in the first place, and he has remained there or nearby for 12 years. In his West Jordan mobile home, he has a wife and three minor children. Although his wife also appears to be in the United States illegally, his children are United States citizens. To provide for his family, Mr. Muñoz-Correa has been working as an independent contractor in construction and claims to have paid taxes. These facts show his ties to the United States and his disincentive to flee.

However, the United States contends that because he is now in the metaphorical crosshairs of a prosecution for unlawful reentry, and faces removal from the United States by immigration officials, he has incentive to flee. But this is precisely the position he was in after being removed in 2011: Mr. Muñoz-Correa knew that immigration officials told him in 2011 that if he returned to the United States, he would face prosecution and removal. Yet Mr. Muñoz-Correa returned to the same residence with his family from which the United States removed him. Moreover, after Mr. Muñoz-Correa was recently involved in a Class A misdemeanor assault under Utah law, he fled the scene of the assault but *voluntarily* returned to the scene after police contacted him. More importantly, he did not flee prosecution but dutifully attended his court

hearings required in that case. There is not a single failure to appear in Mr. Muñoz-Correa's criminal history. Moreover, given that Mr. Muñoz-Correa was removed in 2011 after committing a misdemeanor crime under Utah law, a reasonable inference is that Mr. Muñoz-Correa was more than aware of the likelihood that the same thing might happen again after his recent misdemeanor assault charge. But he did not flee. He attended his hearings and stayed in Utah. In fact, he is currently under probation conditions in state court. In other words, Mr. Muñoz-Correa already had every incentive to flee, but he did not. That Mr. Muñoz-Correa attended all his state court hearings despite likely being aware of the potential consequences also shows his reliability to appear in court when ordered to do so.[23]

      Nevertheless, the United States counters that Mr. Muñoz-Correa has a major incentive to flee because if he is released on conditions, he can neither lawfully work in the United States to provide for his family nor live with his wife. The inference from this, the United States argues, is that Mr. Muñoz-Correa will not sit around and watch his family starve. Instead, he will go somewhere else to find work to support his family and take them with him, thus avoiding prosecution. However, these two premises on which this inference is based are both flawed.

      First, the evidence proffered at the hearing is that Mr. Muñoz-Correa is currently working as an independent contractor. This is significant because, although true that Mr. Muñoz-Correa

---

[23] To be sure, Mr. Muñoz-Correa has shown disrespect for the United States' immigration laws by ignoring his removal order, its concomitant command not to return, and quickly returning despite being fully aware that he was not eligible to even apply to return to the United States for at least 10 years. However, this fact does not cut in the United States' favor because Mr. Muñoz-Correa's clear disrespect for the United States' immigration law manifested itself in him *returning* to the United States and staying for over 12 years. His disrespect for immigration law can hardly establish a "significant risk" that he will "flee" the United States.

could not lawfully work for an earn "wages" from an "employer" as an illegal immigrant,[24], these penalties against *employers* do not apply to independent contractors.[25] In other words, the statutes cited to the court do not threaten prosecution if Mr. Muñoz-Correa works for himself, and others can contract for his services without violating the criminal provisions of the immigration laws governing the hiring of illegal immigrants as "employees" who earn "wages."

      Second, the United States' assertion that Mr. Muñoz-Correa would commit another crime for living with his wife, who is also an illegal immigrant, is without legal basis. The United States cited to 8 U.S.C. § 1324(a)(1)(A)(iii) for the proposition that if Mr. Muñoz-Correa lived with and supported his wife, he would be unlawfully harboring an illegal alien and, therefore, subject to further prosecution. Section 1324(a)(1)(A)(iii) provides a criminal sanction for

> [a]ny person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation.

However, to be guilty of this crime, a jury must find that "defendants intended to violate the law" for the "purpose of avoiding [the aliens'] detection by immigration authorities."[26] Nothing in this record suggests that Mr. Muñoz-Correa has been or will be intentionally supporting his wife for the purpose of concealing her from immigration authorities especially where, as here, immigration authorities appear to be quite aware of her illegal status and where she resides. In other words, Mr. Muñoz-Correa can go home and live with his wife without being in danger of

---

[24] 8 U.S.C. § 1324a; 8 C.F.R. § 274a.10.

[25] 8 C.F.R. § 274.1(f), (j).

[26] *United States v. You*, 382 F.3d 958, 966 (9th Cir. 2004).

further prosecution for "harboring" an illegal alien. Thus, the United States' inferred incentive to flee is not legally justifiable.

In sum, Mr. Muñoz-Correa retains his ability to earn money and support his family (including his wife), which is the incentive that brought him immediately brought him back from Mexico in 2011 and demonstrates both his ties to the United States and his disincentive to flee. Additionally, despite likely being aware of the immigration consequences of being prosecuted for misdemeanor assault under Utah law, he attended his hearings and did not flee despite having every incentive to do so. This shows that even though Mr. Muñoz-Correa may have the ability to flee, he instead has reliably attended his court hearings. Therefore, the United States has failed to show—even under a standard less than a preponderance of the evidence—that Mr. Muñoz-Correa poses a substantial or considerable possibility that he will volitionally avoid prosecution or court supervision. Accordingly, the United States has not carried its burden to obtain a detention hearing.

## II. THE UNITED STATES CANNOT SHOW THAT MR. MUÑOZ-CORREA IS AN UNMANAGEABLE RISK OF NONAPPEARANCE.

Even if the United States were given a detention hearing, the foregoing analysis shows that it could not meet its burden to show by a preponderance of evidence that Mr. Muñoz-Correa is an unmanageable risk of nonappearance. Accordingly, the court can impose conditions that will reasonably assure Mr. Muñoz-Correa's appearance at future court hearings in this action. To that end, the court imposes the following conditions on Mr. Muñoz-Correa:

(1)     Mr. Muñoz-Correa must not commit any offense in violation of federal, state, local, or tribal law while on release in this case.

(2)     Mr. Muñoz-Correa must immediately advise the court, defense counsel, and the United States in writing of any change in address and telephone number.

(3)     Mr. Muñoz-Correa must appear in court as required and must surrender for service of any sentence imposed.

(4)     In addition to the foregoing, Mr. Muñoz-Correa must:

    (a)     maintain or actively seek verifiable employment and/or maintain or commence an educational program as approved by the pretrial officer.

    (b)     abide by the following restrictions on his/her personal associations, place of abode, or travel:

        (i) maintain residence at his residence with his family in West Jordan and do not change without prior permission from the pretrial officer.

        (ii) not travel outside the state of Utah without prior permission from the pretrial officer.

        (iii) not travel outside the United States without prior permission from the court.

    (c)     report on a regular basis to the pretrial officer as directed. Immediately report to the pretrial officer any contact with law enforcement personnel, including arrests, questioning, or traffic stops.

    (d)     not possess a firearm, ammunition, destructive device, or other dangerous weapon.

    (e)     not use alcohol to excess and not frequent establishments where alcohol is the main item of order, in light of the alcohol apparently being involved in his recent misdemeanor assault charge.

(f)     not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802 unless prescribed by a licensed medical practitioner. Prescriptions should be reported to the pretrial officer. This condition is implemented in furtherance of the state court's condition of probation that requires drug testing.

(g)     Mr. Muñoz-Correa shall not use, possess, or ingest products containing tetrahydrocannabinol (THC) or cannabidiol (CBD) in any form unless they are approved by the Food and Drug Administration and obtained from a pharmacy by prescription from a licensed medical professional. For purposes of this condition, an authorization for THC or CBD issued under the law of any state is not valid; a state-issued marijuana medical card is not a prescription; and a THC/CBD dispensary is not a pharmacy. Mr. Muñoz-Correa is not allowed under any circumstances to market any product containing THC or CBD.

(h)     Mr. Muñoz-Correa must submit to drug/alcohol testing as directed by the pretrial officer; he shall pay all or part of the cost of the drug testing, and if testing reveals illegal drug use, the court will be notified immediately, with further action to be determined.

(i)     Mr. Muñoz-Correa must participate in the following location restriction program and abide by its requirements as the pretrial officer instructs. He must pay all or part of the cost of location monitoring based upon his ability to pay as determined by the pretrial officer. No overnight travel without Court approval.

**Home Detention**. Mr. Muñoz-Correa is restricted to his residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities preapproved by the pretrial officer;

(j)     Mr. Muñoz-Correa must submit to the following location monitoring technology and comply with its requirements as directed:

   Global Positioning Satellite (GPS);

(k)     Mr. Muñoz-Correa must submit person, residence, office, or vehicle to a search, conducted by the pretrial officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; Mr. Muñoz-Correa will warn any other residents that the premises may be subject to searches pursuant to this condition.

In addition to these conditions, the court also advises Mr. Muñoz-Correa of the following:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court, and could result in a term of imprisonment, a fine, or both.

The commission of a federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years if the offense is a felony; or a term of imprisonment of not more than one year if the offense is a misdemeanor. This sentence will be in addition to any other sentence.

Federal law makes it a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment and a $250,000 fine or both to tamper with a witness, victim, or informant; to retaliate or attempt to retaliate against a witness, victim, or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The

penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1)     an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2)     an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)     any other felony, you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)     a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender must be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

To ensure that Mr. Muñoz-Correa is fitted with his GPS unit and is given this form to acknowledge the conditions of his release, Mr. Muñoz-Correa shall be released from jail and shall report to the United States Probation Office no later than 10:00 a.m. on Tuesday, September 5, 2023. Failure to report will result in a warrant for his arrest being issued. If the United States

appeals this decision, then Mr. Muñoz-Correa shall report to the United States Probation Office within 24 hours of being released from jail if this order is affirmed. Obviously, if this release order is reversed, then all these conditions have no effect.

    IT IS SO ORDERED.

    DATED this 1st day of September 2023.

                              BY THE COURT:

                              JARED C. BENNETT
                              United States Magistrate Judge